SAMPLINER v. MOTION PICTURE PATENTS CO. et al.

(District Court, S. D. New York. June 4, 1917.)

CHAMPERTY AND MAINTENANCE ⊕⇒5(6)—PURCHASE OF CLAIMS FOR DAMAGES BY ATTORNEYS.

While a claim for treble damages by a person injured by a violation of the Sherman Anti-Trust Law (Act July 2, 1890, c. 647, 26 Stat. 209) is assignable, where a lawyer, for services that he was willing to settle for $5,000 cash, took an assignment of a claim which he thought was worth at least $75,000, the transaction was champertous, and he could maintain no action on the assigned claim, as it was taken for purposes of speculation.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 36–41.]

Action by Joseph Sampliner against the Motion Picture Patents Company and others. On motion for a directed verdict. Motion granted.

Plaintiff claimed to be the assignee of the Lake Shore Film & Supply Company, of Cleveland, Ohio, against defendants for triple damages under the Sherman Anti-Trust Act. The defendants set up the defense of champerty, and that issue was tried separately under the provisions of Code N. Y. § 973, before judge and jury.

Rogers & Rogers, Gustavus A. Rogers, and Saul E. Rogers, all of New York City, for plaintiff.

Charles F. Kingsley, of New York City, for defendants Motion Picture Patents Co., Jeremiah J. Kennedy, and Harry N. Marvin.

Coudert Bros., Samuel Seabury, and Charles B. Samuels, all of New York City, for defendants Pathé Frères and Jacques A. Berst.

Robert H. McCarter, of Newark, N. J., and George F. Scull, of New York City, for defendants Thomas A. Edison, Inc., Frank L. Dyer, and William Pelzer.

R. O. Moon, of Philadelphia, Pa., for defendant Kalem Co.

Dwight Macdonald, of New York City, for defendant Percival Waters.

Samuel O. Edmonds, Samuel Seabury, and William M. Seabury, all of New York City, for defendants Albert E. Smith and Vitagraph Co. of America.

MAYER, District Judge. Both sides having moved for a direction of a verdict, I find as a fact that the plaintiff purchased this cause of action with intent to sue thereon. I find, as a fact, also, that the so-called assignment, Plaintiff's Exhibit No. 1, was executed by the Lake Shore Company, through its officers, pursuant to action at a special meeting of the board of directors. Having thus disposed of the facts, I proceed to express, briefly, my views of the law of the case.

The Sherman Anti-Trust Law was enacted by Congress with the fundamental purpose of redressing what Congress regarded as grievous wrongs visited upon persons by those combinations or monopolies which the statute denounced. It provided, broadly speaking, two kinds of remedies: One was a suit in equity at the instance of the government to dissolve unlawful combinations, and in that manner to destroy conspiracies directed against what Congress regarded as the appropriate conduct of the business of this country. The other remedy which was afforded was to give to the person injured in his business or his property an opportunity to recover damages for injury to his business or his property, and Congress provided that, whatever the damage was which the jury might find, that damage should be trebled—the theory being that the injured person should be recompensed in a manner so exemplary that it would be a lesson to others.

Now, the courts have held that that provision does not provide for a penalty, but must be regarded as in the nature of damage compensation. It certainly never could have been the intent of Congress that so important a remedy, having to do with the appropriate con-

duct of the business of the country, should be the subject-matter of bargain, sale, and speculation at the hands of attorneys. Judge Hough has held, and I am bound to follow his holding, in the Imperial Film Case, 244 Fed. 985, that such a cause of action is assignable. I must therefore start off with the assumption that, as a matter of law, the cause of action could be assigned, and it is probably true that, if the courts thus hold, it will be because they feel that in a proper case a merchant who, or a corporation which, has been injured, may so avail of the cause of action as to be serviceable to creditors, or perhaps to other persons. But I have a strong conviction that it never will be held in a federal court, either in a court of original jurisdiction or an appellate court, that such a cause of action is merchandise, to be availed of by an attorney.

I personally, and every gentleman in this case on both sides, have a very deep regard for the profession to which we belong. It is a profession which insists that its purposes are noble and its practices are useful. It is the duty of the lawyer to render services, to advise, to assist and aid those whose life or liberty or property is in one manner or another in peril. But the moment a lawyer steps down from that high place to be a speculator in lawsuits, he is absolutely violating every tradition of the profession, and the courts have persistently frowned on that sort of thing. The case is entirely different from one where a lawyer, for services rendered, takes an assignment of some thing in action, clearly and unquestionably to recompense himself for such service.

Now, what is this case? In this case a lawyer, for services that he was willing to settle for $5,000 cash, takes an assignment of a claim which he himself thought was worth at least $75,000, and which, trebled, makes over $200,000. He then proceeds, later to bring a lawsuit in which he makes these damages $101,000, which, trebled, means $303,000, and then he comes into this jurisdiction with a claim of $250,000, which, trebled, makes $750,000. If that is not the rankest kind of speculation, I never heard of a case in my life that involved speculation. More than that, little things in a lawsuit are of great service, and, in response to Mr. McCarter's final cross-examination, I noted that the plaintiff said, "The time I bought the claim"—that is unquestionably what he did; if he could get a settlement, well and good; if he could not get a settlement, then he could speculate upon what damages he could obtain.

Now, these defendants, if they were guilty of wrongs, could have responded in a lawsuit to the true plaintiff. This plaintiff's attorney would have had the right to say, "I will take this lawsuit for you on a contingency, dependent on recovery;" and if he had done that he would not have violated the law in any respect, as I understand it. But he was ready to take this claim, and pay money out of his own pocket, which is champertous in itself, for the disbursements necessary to prosecute this lawsuit to an end.

Now, both sides have presented many authorities. I think the case is not one which requires much citation of authority, and I shall content myself with quoting, as part of my opinion that I am now

delivering orally upon this record, the significant words of Chancellor Kent, in a case where perhaps the facts were a little different, but where the principles were stated with the clarity and the firmness that characterized his judicial career. He put the matter in language that any man may understand, and he said:

"The purchase was avowedly made as a matter of speculation, and at a time when this attorney knew, from previous disclosures made to him in his character of attorney, all the facts on which the foundation of the claim so purchased rested, and which created a belief in his mind that the value of the wine could be recovered. Such a purchase, by such an officer, and under such circumstances, cannot be sustained. It is champerty, for the unlawful maintenance of a suit, and the contract was therefore unlawful, as well by common law, as by the statute."

And he continued, and I am quoting from Arden v. Patterson, 5 Johns. Ch. (N. Y.) 44:

"The purchase of a lawsuit by an attorney, in a case like this, is champerty in its most odious form; and it ought equally to be condemned on principles of public policy. It would lead to fraud, oppression, and corruption. As a sworn minister of the courts of justice. the attorney ought not to be permitted to avail himself of the knowledge he acquires in his professional character, to speculate in lawsuits. The precedent would tend to corrupt the profession, and produce lasting mischief to the community."

Adopting those clear and unquestioned statements as the doctrine to which every lawyer and judge who loves his profession must subscribe, I grant the motion and direct a verdict for the defendants.